FILED
2008 Mar-19 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. HUDGINS, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | 1:06-CV-02253-LSC |
| ] | |
| MICHAEL J. ASTRUE, ] | |
| Commissioner, ] | |
| Social Security Administration, ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Michael A. Hudgins ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Hudgins timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Hudgins was thirty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a sixth grade education. (Tr. at

19.) His past work experiences include employment as a steel erector/supervisor, machine operator, and construction laborer. *Id*. at 18. Mr. Hudgins claims that he became disabled on March 27, 2003, due to a major depressive disorder, a general anxiety disorder, and blindness or low vision in his right eye. *Id*. at 11.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis

stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ determined that Mr. Hudgins has not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 13.)  According to the ALJ, Plaintiff's traumatic cataract in the right eye and myopia with astigmatism in both eyes; major depressive disorder; and general anxiety disorder are considered "severe" based on the requirements set forth in the regulations.  *Id*. at 16.  However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id*.  The ALJ did not find Mr. Hudgins's allegations to be totally credible, and he determined that Mr. Hudgins has the following residual functional capacity:

> Claimant's <u>physical</u> RFC consists of the ability to perform heavy work, provided that such work does not involve hazardous activities requiring binocular vision; and . . . his <u>mental</u> RFC consists of the ability to understand, remember, and carry out simple instructions; to respond appropriately to supervisors, co-workers, and the public; and to respond appropriately to normal work pressures.

*Id*. at 20.

According to the ALJ, Mr. Hudgins is unable to perform any of his past relevant work, he is a "younger person," and he has a "marginal education," as those terms are defined by the regulations. *Id*. at 18-19. Although Plaintiff is unable to perform any of his past work, the ALJ determined that there are a significant number of jobs in the national economy that an individual of Mr. Hudgins's age, education, work experience, and residual functional capacity could perform. *Id*. at 19. These jobs include: cleaner (30,000 jobs in Alabama) and packer (4,000 jobs in Alabama). *Id*. The ALJ concluded his findings by stating that Plaintiff "has not suffered from a disability, as defined by the [Social Security] Act, at any time since March 27, 2003, the alleged onset date of disability, through the date of this decision." *Id*. at 20.

II.  Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971);

*Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Hudgins argues that the ALJ's decision should be reversed and remanded for two reasons.  First, Plaintiff alleges that the ALJ's failure to credit the opinion of Dr. Robert A. Storjohann in assessing his mental RFC constitutes improper substitution of opinion.  (Doc. 7 at 10.)  Second, Plaintiff argues that because Dr. Storjohann was the last psychologist to evaluate him, and no newer evidence controverts his findings, this case should be remanded for further medical development.  *Id*. at 13.

A.   Weight Given Non-Treating Psychologist's Opinion.

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Robert Storjohann, his examining but non-treating psychologist.  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical

source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Moreover, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(e). The Court is interested in the doctors' evaluations of the claimant's "condition and the

medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.

At the administrative hearing level, the ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 1546(c). When determining a claimant's mental RFC, the ALJ "must first assess the nature and extent of [the claimant's] mental limitations and restrictions and then determine [his or her] residual functional capacity for work on a regular and continuing basis." 20 C.F.R. § 404.1545(c). This assessment must be "based on all the relevant evidence in [the] record." 20 C.F.R. § 1545(a)(1). In particular, the ALJ "will consider any statements about what [the claimant] can still do that have been provided by medical sources." 20 C.F.R. § 1545(a)(4); *see also* Social Security Ruling 96-5p ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). In evaluating such statements, the ALJ must apply those factors enumerated in §§ 404.1527(d) and 416.927(d) that are applicable. *See* Social Security Ruling 96-5p (noting that "it would be appropriate to consider the supportability of the opinion

and its consistency with the record as a whole"). However, the ALJ is "precluded from giving any special significance to the source." *Id.*; *see also* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2).

Plaintiff applied for benefits on September 29, 2003.[1] (Tr. at 39-43.) On December 29, 2003, the Administration referred Plaintiff to Dr. Robert Summerlin for a psychological evaluation. After reviewing medical and psychological records and personally conducting a psychological examination, Dr. Summerlin concluded that Plaintiff suffered from chronic "Adjustment Disorder With Mixed Anxiety and Depressed Mood." *Id.* at 146. Furthermore, Dr. Summerlin asserted that Plaintiff's Global Assessment Functioning ("GAF") score was 60,[2] indicating that Plaintiff has "[m]oderate emotional symptoms affecting personal, social, and occupational functioning." *Id.*

On January 29, 2004, Dr. Janie Murray, a state agency psychologist, conducted an assessment of Plaintiff's RFC. Based upon Dr. Summerlin's

---

[1]Plaintiff originally alleged that he became disabled on October 15, 2000. (Tr. at 39, 76.) Plaintiff subsequently amended his alleged onset date ("AOD") to February 22, 2002. *Id.* at 42, 76. At the administrative hearing held on August 24, 2005, Plaintiff again amended his AOD to March 27, 2003. *Id.* at 273.

[2]For background information on GAF scores between 51 and 60, see American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (rev. 4th ed. 2000).

diagnoses, Dr. Murray concluded that Plaintiff would be able to concentrate for "2 [hours] in a 6 - 8 [hour] work day."[3] *Id*. at 165. Dr. Murray noted that Plaintiff would work best in a solitary work environment and that supervision should be non-confrontational. *Id*.

To resolve perceived inconsistencies between the diagnoses of Dr. Summerlin and Dr. Murray, Plaintiff's counsel requested that Plaintiff be referred to Dr. Robert Storjohann, a licensed clinical psychologist, for a comprehensive psychological examination. On March 10, 2005, Dr. Storjohann conducted a psychometric evaluation of Plaintiff, and concluded that Plaintiff suffered from major depression, social phobia, and generalized anxiety disorder with panic attacks. *Id*. at 194. Dr. Storjohann opined that Plaintiff's GAF score was currently 40.[4] *Id*. In an RFC Questionnaire, Dr.

---

[3]This statement in Dr. Murray's diagnosis is susceptible to two interpretations. First, Dr. Murray could have meant that Plaintiff can concentrate for a total of two hours in a six to eight hour work day. As would be expected, this is the interpretation advocated by Plaintiff's counsel. *See* Doc. 7 at 9. Alternatively, Dr. Murray could have meant that Plaintiff can concentrate for multiple two hour periods during a six to eight hour work day. This latter interpretation seems to be more logical. If Dr. Murray thought that Plaintiff could only concentrate for a total of two hours in a full work day, it seems unlikely that she would have characterized the breaks required to accommodate Plaintiff as "regular." Furthermore, Dr. Murray indicated that Plaintiff's "ability to maintain attention and concentration for *extended* periods" was only moderately limited. (Tr. at 163 (emphasis added).)

[4]For background information on GAF scores between 31 and 40, see American Psychiatric Association, *supra* n.2, at 34. Dr. Storjohann also indicated that a GAF score

Storjohann indicated that Plaintiff suffered the following impairments: moderate impairment of the ability to interact appropriately with the general public; moderate impairment of the ability to understand, remember and carry out simple instructions; moderate impairment of the ability to make simple work-related decisions; marked to extreme impairment of the ability to respond appropriately to supervision and/or coworkers; marked to extreme impairment of the ability to respond appropriately to changes in the work setting; and marked to extreme impairment of the ability to respond to customary work pressures. *Id.* at 196-97.

Plaintiff purports to dispute "the mental RFC outlined by the ALJ in his decision because it is not supported by the credible psychological evidence of record," evidently referring to Dr. Storjohann's opinion. (Doc. 7 at 5.) However, it should be noted that Dr. Storjoann's opinion is consistent with two parts of the ALJ's findings. First, Dr. Storjohann noted that Plaintiff is not unable to understand, remember, and carry out simple instructions. *See* Tr. at 196. Second, Dr. Storjohann concluded that Plaintiff is not unable to interact appropriately with the general public. *See id.* Therefore, only the

---

of 40 was the highest that Plaintiff had achieved during the previous year. (Tr. at 194.)

following portions of Plaintiff's mental RFC as determined by the ALJ are disputed: the ability to respond appropriately to supervisors and co-workers; and the ability to respond appropriately to normal work pressures.  *See id*. at 20.

Plaintiff argues that because the ALJ adopted the diagnoses of Dr. Storjohann, failure to also adopt "the vocationally relevant limitations attendant to those diagnoses . . . amounts to improper substitution of the opinion of the ALJ for the opinion of the psychological expert."  (Doc. 7 at 10.)  This argument is fundamentally flawed.  The final responsibility for determining the RFC of a claimant is reserved to the Commissioner, because this determination is dispositive of a case.  *See* 20 C.F.R. § 404.1527(e)(2).  Dr. Storjohann's assessment of Plaintiff's RFC is afforded no special significance because it is not a medical opinion; it is, instead, an opinion reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  Requiring the ALJ to accept Dr. Storjohann's assessment of Plaintiff's RFC would impermissibly shift the responsibility for determining Plaintiff's disability from the ALJ to Dr. Storjohann.

Nevertheless, the ALJ was required to evaluate Dr. Storjohann's opinion using the applicable factors enumerated in §§ 404.1527(d) and 416.927(d). In performing this evaluation, the ALJ ultimately chose not to credit Dr. Storjohann's opinion because he found it to be inconsistent with the record as a whole. For example, Dr. Storjohann utilized Plaintiff's claim that he "was a patient at [Calhoun-Cleburne Mental Health Center ("CCMHC")] for about three years." (Tr. at 190.) The ALJ noted that "although Claimant had a series of 'intakes' . . . only two involved follow-up, and even then for no more than two or three individual therapy sessions." *Id.* at 17. The evidence also demonstrates that Plaintiff was not taking Paxil, Seroquel, Effexor, or any other medication for his mental conditions in December 2003. *Id.* Furthermore, Plaintiff "testified that he could no longer fish or hunt due to decreased visual acuity; however, he listed hunting and fishing as hobbies when he was seen in March 2003 at CCMHC, two years after his eye surgery." *Id*. Each of these inconsistencies tends to discredit Dr. Storjohann's opinion.

The ALJ ultimately based his determination of Plaintiff's mental RFC on Dr. Summerlin's opinion. The ALJ noted that "although Dr. Summerlin did

not offer an RFC per se, he assigned to the [Plaintiff] a GAF score of 60 which . . . represents only moderate emotional symptoms affecting personal, social, and occupational functioning." (Tr. at 17.) The ALJ determined that Dr. Summerlin presented relevant evidence to support his findings, which the ALJ considered to be consistent with the record as whole. Furthermore, the ALJ observed that Dr. Summerlin's opinion was related to his specialty. Therefore, the ALJ chose to credit Dr. Summerlin's opinion under §§ 404.1527(d) and 416.927(d).

Given that Dr. Storjohann's opinion is entitled to no "special significance," this Court must conclude that the ALJ properly considered and discredited Dr. Storjohann's opinion. Furthermore, the ALJ's ultimate determination of Plaintiff's mental RFC is supported by substantial evidence.

B.    Propriety of Remand Under 42 U.S.C. § 405(g).

Plaintiff also alleges that because Dr. Storjohann was the last psychologist to evaluate him, and no newer evidence controverts his findings, the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further medical development. As a general rule,

the Claimant is responsible for proving his or her disability by presenting all relevant evidence. *See, e.g.*, 20 C.F.R. §§ 404.1512(a), 416.912(a). Prior to making a final decision, however, the Administration must "develop [the Claimant's] complete medical history for at least the 12 months preceding the month in which" the Claimant files his or her application for benefits. 20 C.F.R. §§ 404.1512(d), 416.912(d). The Administration must "make every reasonable effort to help [the claimant] get medical records from [his or her] own medical sources." *Id*.

In general, when the Appeals Council has denied review of the ALJ's decision, as in this case, a reviewing court will look to only that evidence which was actually submitted to the ALJ in deciding whether the decision to deny benefits is properly supported. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). However, under certain circumstances, the reviewing court is permitted to remand a case for additional evidence to be taken before the Commissioner. *See* 42 U.S.C. § 405(g). For remand to be proper under §405(g), the Plaintiff must "show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good

cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994)); *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir. 1988)); *see also Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Plaintiff has failed to meet his burden under § 405(g). Plaintiff argues that *if* the reports of both Dr. Summerlin and Dr. Storjohann were accurate when written, then Plaintiff's psychological problems have worsened over time. Plaintiff therefore asserts that this case should be remanded for further medical development.[5] However, Plaintiff has not shown that new evidence *actually* exists which would have affected the ALJ's decision.

---

[5]The only authority that Plaintiff cites in support for this proposition is *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988). In *McCall*, the Plaintiff suffered from certain health problems which her physician suggested were aggravated by her obesity. In affirming the Secretary's decision denying Plaintiff's claim for benefits, the district court stated that "if an impairment can reasonably be remedied or controlled by treatment, it cannot serve as a basis for finding a disability." *Id.* at 1319. The Eleventh Circuit noted that the proper standard is whether the "claimant, without good reason, fail[ed] to follow a prescribed course of treatment that could [have] restore[d] her ability to work." *Id.* at 1319. Because the court determined that no evidence suggested that Plaintiff had refused to follow a prescribed treatment plan, the court vacated the district court's order and remanded the case for further proceedings. *Id.* at 1318. *McCall* does not persuade this Court that this case should be remanded. Instead, the Court will determine whether this case should be remanded under 42 U.S.C. § 405(g).

Ultimately, Plaintiff is responsible for providing evidence to prove disability. If Plaintiff feels that more recent evidence might lead to a different result, he should file a new application with the Administration. This Court can not properly remand this case under § 405(g).

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Hudgins' arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 19th day of March 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671